UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH J. JACOBONI

      Plaintiff,

vs.                                Case No. 6:02-cv-510-Orl-22DAB

KPMG LLP,

      Defendant.

_____/

## MEMORANDUM IN SUPPORT OF DEFENDANT
## KPMG LLP'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

156

# TABLE OF CONTENTS

I.   STATEMENT OF FACTS ................................................................................................ 1

II.  ARGUMENT................................................................................................................... 3

    A.   The Standard For Summary Judgment ................................................................. 4

    B.   Jacoboni Cannot Recover Unrealized Tax Savings Because The Internal Revenue Code, Not KPMG, Caused Jacoboni To Owe The Taxes ................................................................. 5

        1.   Jacoboni cannot recover taxes as damages under Civil RICO ....................................... 5

            (a)   Jacoboni's tax liability was not caused by KPMG ................................................. 5

            (b)   Jacoboni cannot satisfy the RICO causation requirement through allegations of "missed opportunity" ........................................................................................ 9

        2.   Jacoboni cannot recover taxes as damages under his common law tort claims and his claim under the Florida Deceptive and Unfair Trade Practices Act ................................... 11

        3.   Jacoboni cannot recover taxes as damages under his contract-based claims -- breach of contract, promissory estoppel, and fraud in the inducement ................................................ 14

    C.   Jacoboni Cannot Recover Damages For Interest Paid To The IRS .................................. 15

    D.   Jacoboni Cannot Recover Damages For Back Taxes And Interest Because He Voluntarily Chose To Settle With The IRS.................................................................................. 16

    E.   Jacoboni Cannot Recover Damages For His Alleged Net Investment Loss And Audit Fees 17

    F.   Jacoboni's Claims Fail Because He Cannot Establish Reasonable Reliance ................... 18

    G.   Jacoboni's Florida DUTPA Claim Is Barred By The Statute Of Limitations .................. 19

III. CONCLUSION................................................................................................................ 20

Defendant, KPMG LLP ("KPMG") respectfully files this memorandum in support of its Motion for Summary Judgment.

## I.   STATEMENT OF FACTS

Plaintiff, Joseph J. Jacoboni ("Jacoboni"), is a sophisticated, successful entrepreneur and businessman who, among other endeavors, was a founder and executive of Software Support, Inc. ("SSI"), a business providing technical support for computer systems. (Second Amended Complaint, ¶ 6, attached as Exhibit A). In January 1997, Jacoboni sold all of his shares in SSI to Matrixx Marketing, Inc., earning a profit in excess of $28.3 million. (*Id.*). As a result, he incurred an approximately $8 million capital gains tax liability. (Deposition of Bruce Dubinsky, p. 121, attached as Exhibit B). Indeed, plaintiff's own expert has conceded that he incurred this liability upon the sale of his stock. (Deposition of Bernard Wolfman, p. 89, attached as Exhibit H).

Jacoboni's bankers introduced him to KPMG, which allegedly discussed with him an investment strategy known as the Foreign Leveraged Investment Program ("FLIP") Strategy, a strategy that included a series of transactions involving direct and indirect investments in Union Bank of Switzerland ("UBS"). (Exhibit A, ¶¶ 8-9, 11.) On September 15, 1997, KPMG sent Jacoboni a letter agreement (the "Engagement Letter") setting forth the terms and conditions of KPMG's engagement to provide services to Jacoboni in connection with the FLIP Strategy. (*Id.* at ¶ 14 and Exhibit 4 attached thereto). Among other things, the Engagement Letter specifies that

- "KPMG shall have no liability to you for any special, incidental or consequential damages, including without limitation loss of profits, even if KPMG has been advised of the possibility of such damages."

- "No one has provided you with any assurances or guarantees that you will make money in any of these transactions."

1

- "You are at all times subject to market risks for both loss and reward."
- "You acknowledge that the tax opinion issued by KPMG does not guarantee tax results, but rather provides that the tax treatment described in the opinion is more likely than not to occur."

Jacoboni ultimately elected to pursue the FLIP Strategy and contracted with KPMG to perform tax consultation services. (*Id.* at ¶¶ 14, 21 and Exhibit 4 attached thereto). Jacoboni signed the Engagement Letter on July 30, 1998, after consulting with his personal attorney Thomas M. Dixon, confirming his agreement to the terms and conditions set forth therein. (*Id.* at ¶ 21 and Exhibit 4 attached thereto; Deposition of Joseph Jacoboni, pp. 188-192, attached as Exhibit C).

The FLIP transaction was composed of a series of purchases and sales of stock, options, puts, and calls in non-party UBS and of a warrant from non-party Jacaranda Capital, Inc. (Exhibit A, ¶ 9). Jacoboni participated in the FLIP Strategy in 1997 and realized over $30 million in capital losses. (*Id.* at ¶ 23). As a result, Jacoboni did not pay any capital gains tax on the sale of his SSI stock. (*Id.*). The FLIP Strategy is the only tax savings plan Jacoboni considered prior to filing his 1997 tax return. (Jacoboni's Second Supplemental Responses to KPMG's First Set of Interrogatories, pp. 17-18, attached as Exhibit D; Exhibit C, pp. 302-304). Jacoboni never sought advice from KPMG regarding alternative tax and investment strategies, nor did he ever explore any other tax minimization strategy with other tax or investment professionals. *Id.*

In late Summer 2001, the IRS commenced an audit of Jacoboni's 1997 return. (Exhibit A, ¶ 25.) Jacoboni claims that, pursuant to a settlement with the IRS, he has agreed to pay $6,468,294 in taxes, $3,233,950.92 in interest, and no penalty. (IRS Settlement, p. J2058, attached as Exhibit E). Jacoboni has sought an abatement of his obligation to pay interest. *Id.*

## II. ARGUMENT

Jacoboni seeks as damages the taxes he has voluntarily agreed to pay and the interest he may pay the IRS relating to his 1997 federal income tax return. Jacoboni also seeks his alleged net investment loss ($1,826,000) and professional fees relating to the IRS audit of his 1997 tax return ($90,000). (Supplemental Revision to the Revised Expert Report of Bruce Dubinsky, pp. 5-6, attached as Exhibit F). KPMG is entitled to summary judgment on all counts of Jacoboni's Complaint, because Jacoboni is not permitted to recover any of the damages he seeks.

First, Jacoboni is not permitted to recover any damages for back taxes he owes to the IRS. The taxes owed by Jacoboni are statutory exactions, not damages; they were neither caused by any action of KPMG nor increased by KPMG. Accordingly, the taxes are not recoverable under Jacoboni's tort-based claims, because Jacoboni's obligation to pay the tax was not a proximate consequence of KPMG's alleged torts. Likewise, the taxes cannot be recovered under a contract-based "benefit of the bargain" theory, because KPMG's contract with Jacoboni, the Engagement Letter, specifically stated that KPMG did not guarantee tax results.

Second, Jacoboni may not recover interest, because interest paid to the IRS is not damage; it simply represents reimbursement to the IRS for the use of its money, and is offset by the benefit Jacoboni enjoyed during the several years he enjoyed the use of the tax amounts he is now paying. Moreover, Jacoboni's obligation to pay interest is speculative, because he has sought an abatement of his obligation to pay interest.

Third, Jacoboni also may not recover damages for back taxes and interest because he voluntarily chose to settle with the IRS.

Fourth, Jacoboni may not recover damages for his alleged net investment loss because Jacoboni specifically acknowledged in his contract with KPMG, the Engagement Letter, that he was not guaranteed to make money on his investments, that he was at all times subject to market

risks for both loss and reward, and that KPMG shall have no liability for any special, incidental or consequential damages.

Fifth, Jacoboni cannot recover the cost of the IRS audit, because there is no evidence that KPMG caused him to be audited or guaranteed that he would not be audited. Nor could Jacoboni reasonably rely on such a guarantee. Indeed, Jacoboni has admitted that he knew that he could be audited. (Exhibit C, pp. 238-239).

KPMG is also entitled to summary judgment on Jacoboni's civil RICO[1], fraud, fraud in the inducement, and negligent misrepresentation claims, because Jacoboni could not have reasonably relied on the alleged oral misrepresentations at issue when it is undisputed that he received contrary written representations.

Finally, Jacoboni's Florida Deceptive and Unfair Trade Practices Act claim is barred by the statute of limitations.

## A.    The Standard For Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 250.

---

[1]    As is fully set forth in KPMG's Dispositive Motion for Judgment on the Pleadings and Memorandum of Law in Support, which are incorporated by reference herein, KPMG is also entitled to judgment on Plaintiff's civil RICO claims because the RICO statute itself explicitly bars plaintiffs from "rely[ing] upon any conduct that would have been actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c).

**B.     Jacoboni Cannot Recover Unrealized Tax Savings Because The Internal Revenue Code, Not KPMG, Caused Jacoboni To Owe The Taxes**

Jacoboni's Second Amended Complaint alleges seven different theories of recovery: (1) civil RICO, (2) fraud, (3) fraud in the inducement, (4) negligent misrepresentation, (5) malpractice, (6) breach of contract, and (7) violations of the Florida Deceptive and Unfair Trade Practices Act. Jacoboni may not recover taxes owed to the IRS under any of these theories, because Jacoboni's taxes are statutory liabilities imposed by law. They are not a debt resulting from KPMG's alleged wrongful conduct; and, KPMG did not guarantee tax savings.

### 1.     Jacoboni cannot recover taxes as damages under Civil RICO

RICO damages must be "both factually and proximately caused by a defendant's violation of section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 329 (2d Cir. 2001). Unrealized tax benefits are not RICO damages unless they result from the defendant's fraud (or other RICO predicate act). *See Sedima S.P.R.L.*, 473 U.S. at 496-97 ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."). Jacoboni cannot recover taxes as damages because KPMG did not cause him to owe taxes. He owed the taxes as a result of his sale of his SSI stock prior to his relationship with KPMG and his investment in FLIP. (Exhibit H, p.89).

#### (a)     Jacoboni's tax liability was not caused by KPMG

Courts addressing claims against tax and/or investment advisors for tax savings rejected by the IRS have uniformly concluded that such tax savings cannot be awarded as damages because they are not actual "out-of-pocket" damages caused by a defendant's conduct. *See DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442, 1447-48 (9th Cir. 1996); *Jones v. Childers*, 1992 WL

300845, *23 (M.D. Fla. June 26, 1992),[2] *aff'd in pertinent part*, 18 F.3d 899, 915 (11th Cir. 1994); *Stone v. Kirk*, 8 F.3d 1079, 1092-93(6th Cir. 1993); *Securities Group 1980 v. Dayton Securities Assoc.*, 124 B.R. 875, 902-03 (Bankr. M.D. Fla. 1991). Though many of these cases allege securities fraud, they are nevertheless applicable to Jacoboni's civil RICO claim. The federal RICO statute and federal securities laws have comparable damages restrictions, generally limiting a plaintiff's recovery to actual "out-of-pocket" damages resulting from a defendant's wrongful conduct. *Securities Group 1980*, 124 B.R. at 902-03.

In *DCD Programs Ltd.,* plaintiffs brought suit after the IRS disallowed deductions relating to limited partnership interests marketed as "tax shelters." The Ninth Circuit rejected the plaintiffs' argument that taxes and interest were out-of-pocket losses:

> In arguing that the taxes paid by the partners to the IRS represent out-of-pocket "losses," the plaintiffs fundamentally mischaracterize the nature of those payments. If the partners had not purchased limited partnership interests in the first instance, they would still have had to pay the taxes in question, based on their overall income situation. The fact that they ultimately did so does not suggest that they suffered an out-of-pocket "loss" as a result of their investment; rather it merely indicates that one anticipated benefit of their investment failed to materialize. The taxes paid can therefore properly be characterized only as benefit-of-the-bargain damages, not as out of pocket losses.

90 F.3d at 1447. The plaintiffs also argued that the taxes could be recovered as consequential damages, relying on an exception to the "out-of-pocket" rule that allows recovery of consequential damages that "can be proven with reasonable certainty to have resulted from the fraud." *Id.* at 1449. The court rejected this argument as well, explaining that

> The partners' tax liabilities resulted from the ineluctable requirements of the Internal Revenue Code, rather than from any

---

[2]     Copies of all unpublished decisions cited herein are attached for the Court's convenience as Exhibit G.

> wrongful conduct on the part of the defendants. As such, the taxes
> cannot be recovered as consequential damages.

*Id.*; *see also Securities Group 1980*, 124 B.R. at 902-903 (rejecting a claim for damages "as a result of any adverse tax consequences which [the plaintiff] would have avoided if the [tax strategy marketed by the defendants] had been a legitimate tax shelter," because such injuries were not personally sustained as a result of conduct violative of the RICO statute).

This Court applied the same principles in ruling on a claim for taxes as damages in *Jones.* In *Jones*, the plaintiffs were fraudulently induced to enter into investments that generated phantom income, which *increased* their tax liability. This Court awarded damages for the plaintiffs' tax liability on the phantom income, because that liability was caused by the defendants' conduct. Importantly, however, this Court denied the plaintiffs' demand for damages for the defendants' failure to decrease their pre-existing tax liability, recognizing that back taxes are nothing more than "money [a plaintiff] owes to the IRS based on his income and . . . [are] not damages proximately caused by the action of the Defendants." 1992 WL 300845, *23.

In another lawsuit against KPMG alleging similar claims to those brought herein by Jacoboni, the Southern District of Florida relied on the Eleventh Circuit's affirmation of *Jones* in dismissing the plaintiff's claim for back taxes and interest. *Loftin v. KPMG, LLP, et al.*, 2003 WL 22225621 (S.D. Fla. Sept. 10, 2003), *clarified*, Order of Nov. 12, 2003, p. 6. Like Jacoboni, the plaintiff in *Loftin* sought damages for back taxes and interest that plaintiff anticipated he would owe to the IRS as a result of the IRS's disallowance of plaintiff's deduction of certain capital losses incurred in a FLIP transaction and in a second, separate tax strategy. 2003 WL 22225621, *1-*3. In addition to dismissing the claim as speculative, the court held that "back taxes and interest are not legally cognizable injuries" and that "if Loftin's settlement payment

amounts to nothing more than payment for back taxes and interest, he will not have suffered a compensable injury." *Loftin*, Order of November 12, 2003, p. 6.

Like the plaintiffs in *DCD Programs Ltd.*, *Jones*, and *Loftin*, Jacoboni's tax liability was not "caused" by KPMG, but instead resulted from "the ineluctable requirements of the Internal Revenue Code" and from his "overall income situation," namely his sale of SSI to Matrixx Marketing, Inc. 90 F.3d at 1447-49. If Jacoboni had never elected to pursue the FLIP Strategy, he would have had to pay taxes on his capital gains. KPMG's alleged misconduct did not cause Jacoboni's tax liability. Indeed, the undisputed facts are that Jacoboni has paid less in taxes ($6,468,294) than he would have owed had he not done the transaction (approximately $8 million). Jacoboni therefore cannot recover taxes for this alleged injury under the RICO statute.

Any argument by Jacoboni that taxes are recoverable under RICO as "benefit of the bargain" or expectancy damages is not a ground for recovery. [3] The causation requisite to confer RICO standing cannot exist where the expectancy interest at issue would not have existed but for the alleged RICO violation. *Heinold*, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987); *Scivally v. Graney*, 21 F.3d 420 (Table), 1994 WL 140413, *3 (1st Cir. Apr. 15, 1994); *Korman v. Trusthouse Forte PLC*, 1990 WL 83353, *6 (E.D. Pa. June 15, 1990). The court in *Heinold* explained this principle as follows:

> Plaintiff argues . . . that he sustained injury because he lost the benefit of his bargain, *i.e.*, his expectation interest in the contract. In other words, plaintiff argues that defendant's wrongful conduct induced him to enter a contract and then caused injury to the property rights created by that contract. I conclude that this does not give plaintiff the standing to sue under RICO. RICO confers a cause of action only when the injury to business or property

---

[3]  Jacoboni admits, through the report of his proferred expert Mr. Bruce Dubinsky, that the recovery he seeks for unrealized tax savings arises solely from an alleged expectation or "benefit of the bargain" interest and is not properly viewed as an alleged "out-of-pocket" loss caused by KPMG. (Exhibit F, pp. 2-4).

suffered by a plaintiff is caused by the conduct constituting the RICO violation. *Where, as here, the only property to which a plaintiff alleges injury is an expectation interest that would not have existed but for the alleged RICO violation, it would defy logic to conclude that the requisite causation exists.*

651 F. Supp at 1412 (citations omitted, emphasis added). Accordingly, regardless of label, Jacoboni cannot recover taxes under RICO because KPMG did not cause him to owe the taxes.

### (b) Jacoboni cannot satisfy the RICO causation requirement through allegations of "missed opportunity"

Any argument by Jacoboni that KPMG's alleged misrepresentations prevented his use of an alternative tax strategy that would have yielded savings also is not a ground for recovery. "Missed opportunity" claims are not cognizable under the RICO statute because (1) they do not allege an injury to property and (2) they are too speculative to be proven with reasonable certainty. In the *Heinold* case, the court summarily rejected a "missed opportunity" argument nearly identical to Jacoboni's. The plaintiff in *Heinold* sought "benefit of the bargain" damages under RICO, alleging that the defendants fraudulently induced him to enter into a contract which, although it led to profits, did not lead to as much profit as he expected. The court held that these allegations failed to satisfy RICO's causation requirement. 651 F. Supp at 1412. The plaintiff further alleged that the defendants' fraudulent misrepresentations foreclosed him from pursuing other, more profitable transactions. The court rejected this argument:

> Plaintiff also argues that, even if he came out ahead on his deal with defendant, he may have made out even better had he purchased a diamond elsewhere, but that defendant's fraudulent misrepresentations foreclosed him from shopping at other places. However, the possibility that plaintiff may have gotten a better deal from another merchant is not a property right. Hence, even if defendant's conduct foreclosed plaintiff from shopping elsewhere, that cannot constitute injury to property under RICO.

651 F. Supp. 1412, fn.1. Thus, Jacoboni's "missed opportunity" allegations do not satisfy RICO's causation or standing requirements, because they do not allege an injury to property.

Jacoboni's "missed opportunity" allegations are also too speculative to support a claim for damages, because Jacoboni has admitted that he did not research (nor ask anyone else to research) other means of lowering his capital gains taxes. (Ex. C. 302-03). *See, e.g., Doug Grant, Inc. v. Greater Bay Casino Corp.*, 3 F. Supp. 2d 518, 534 (D.N.J. 1998)("A lost opportunity to obtain a financial benefit is too speculative to constitute an injury to business or property under RICO."). "To obtain civil RICO standing, [the plaintiff] must prove a 'concrete financial loss.'" *Bermingham v. Plumbing & Pipefitting Industry Local 38*, 53 F.3d 337 (Table), 1995 WL 225642, *1. A "plaintiff may not recover for speculative losses or where the amount of damages is unprovable." *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995). A plaintiff attempting to prove a "missed opportunity" claim must show with great specificity (1) that he was considering another transaction, (2) that he in fact would have proceeded with the transaction absent defendant's wrongful conduct, and (3) that the alternative transaction in fact would have yielded the desired results. *See Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 922-23 (11th Cir. 1987) (rejecting plaintiff's claim because he had no proof that he would have adopted the alternative strategy absent defendant's fraud); *Resolution Trust Corp. v. Stroock, Stroock & Lavan*, 853 F. Supp. 1422, 1424-26 (S.D. Fla. 1994); *Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11th Cir. 1990).

In *Resolution Trust Corp.*, the court rejected a plaintiff's claims for losses incurred in a junk bond transaction, in which the plaintiff argued that, absent the defendants' wrongful conduct, it would have invested in a transaction that would have produced a much greater return. The plaintiff attempted to establish its case by offering expert testimony about the "most likely"

alternative investments that were available.[4]  The court held that the damages claimed by

plaintiff were too speculative:

> [E]ven in an alternative world where the investment option is
> known, time-sensitivity of transactions alone can inject enough
> uncertainty into the measure of damages to render lost profits
> unrecoverable.  Obviously, this factor is greatly compounded
> where the alternative investment choice is not known.  While
> difficulty in determining the precise amount of damages will not
> prevent recovery, there must be "such certainty as satisfies the
> mind of a prudent and impartial person."

853 F. Supp. at 1426 (citation omitted).

Jacoboni cannot show that any such alternative tax strategy existed or that he was even

aware of an alternative tax strategy in 1997.  Much less could he "establish with reasonable

certainty that he would have followed" such a strategy.  Allegations of lost opportunity "where

the alternative investment choice is not known" fall short of the requisite level of "certainty as

satisfies the mind of a prudent and impartial person."  *Resolution Trust Corp.*, 853 F. Supp. at

1426.  As a result, even if "missed opportunity" damages were cognizable under RICO as an

injury to property (and they are not), Jacoboni's naked "missed opportunity" claim, unsupported

by any facts, is far too speculative to merit recovery.

> ## 2.  Jacoboni cannot recover taxes as damages under his common law tort claims and his claim under the Florida Deceptive and Unfair Trade Practices Act

Florida law likewise does not allow recovery of taxes under Jacoboni's common law tort

claims of fraud, negligent misrepresentation, and accountant malpractice and his claim under

Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201-.213

("DUTPA").  Like the RICO damages restrictions, a claimant under the DUTPA is limited to

---

[4]      Jacoboni has not attempted to offer expert testimony regarding what else he could have
done to lower his taxes.

"actual damages" suffered "as a result of a violation." *Ft. Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4ᵗʰ DCA 1998); *see also Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1ˢᵗ DCA 1985). Under Florida tort law, a tort plaintiff is limited to damages necessary to restore him to the position he occupied prior to a defendant's wrongful conduct. Florida courts draw a sharp distinction between "contract remedies" and "tort remedies" as follows:

> In tort actions, the measure of damages seeks to restore the victim to the position he would be in had the wrong not been committed. In actions for breach of contract, the aim is not the mere restoration to a former position as in tort, but is the awarding of a sum which is equivalent to the performance of the bargain; the attempt is to place the plaintiff in the position he would be in if the contract had been fulfilled.

*Ashland Oil, Inc. v. Pickard*, 269 So. 2d 714, 723 (Fla. 3ᵈ DCA 1972). "Benefit of the bargain" or expectancy damages cannot be recovered in a tort case unless they are necessary to restore the plaintiff to the position he occupied *prior to the defendant's wrongful conduct*. Only if Jacoboni would have had no capital gains tax liability prior to KPMG's actions could he recover such "benefit of the bargain" damages. *See, e.g., Nordyne, Inc. v. Florida Mobile Home Supply, Inc.*, 625 So. 2d 1283, 1287 (Fla. 1ˢᵗ DCA 1983).

KPMG's actions were not a "but for" cause imposing on Jacoboni a capital gains tax liability of which he was free before encountering KPMG. His sale of his SSI stock was the sole cause of his statutory tax liability. (Exhibit H, p.89). If Jacoboni had never entered into the FLIP Strategy, he owed the taxes at issue. Consequently, damages equal to his hoped for tax benefits would be more than "mere restoration to [Jacoboni's] former position," a result not permitted under Florida law. *Ashland Oil, Inc.*, 269 So. 2d at 723.

The causation requirement under Florida's tort law and DUTPA remedies is also a bar to Jacoboni's "missed opportunity" claim. "In Florida, unless the fact finder is presented with

evidence which will enable it to determine damages for lost profits with a reasonable degree of certainty, rather than by means of speculation and conjecture, the claimant may not recover such damages." *Himes v. Brown & Co. Securities Corp.*, 518 So. 2d 937, 939 (Fla. 3ᵈ DCA 1988). In *Himes*, the plaintiff claimed to have suffered damages as a result of two missed opportunities arising out of a broker's misconduct in handling certain securities transactions. The court rejected the plaintiff's claim as "speculative" for the following reasons:

> [Plaintiff's] only claim is that [Defendant's] actions deprived him of anticipated profits because he would have sold (or purchased in the case of a short sale) the securities at the optimal time and earned a profit. . . . [Plaintiff] did not present any evidence which would prove that he would have completed the time-sensitive transactions at precisely the correct time and we doubt whether he could have offered such proof. The evidence strongly supports [Defendant's] position that [Plaintiff's] only damages are speculative "lost profits" damages and are therefore not recoverable.

*Id.* Similarly, in *Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11ᵗʰ Cir. 1990) (applying Florida law), the plaintiff sought "missed opportunity" damages, claiming that he would have sold stock before its decline in value "but for" the defendants' failure to provide him with the negative information. The Eleventh Circuit rejected the claim, holding that "such speculative lost profits damages are not recoverable." *Id.*

As set forth in *Himes* and *Kane*, absent specific evidence that a plaintiff would provably have completed an alternative transaction in the absence of a defendant's wrongful conduct, Florida regards "lost opportunity" damages as too speculative and "not recoverable." *Id.* Jacoboni's claim relies only on his unsupported assertions of what he now wants to say he "would have" done, but he has admitted that he was neither aware of nor considered any alternative tax avoidance strategies. (Exhibit C, pp. 302-303; Exhibit D, pp. 17-18). He is not entitled to recover taxes under a "missed opportunity" theory.

**3.** **Jacoboni cannot recover taxes as damages under his contract-based claims -- breach of contract, promissory estoppel, and fraud in the inducement**

Jacoboni cannot recover taxes under his contract claims (breach of contract, promissory estoppel, and fraud in the inducement) because his contract with KPMG -- the Engagement Letter -- does not guarantee *any* tax savings. In the Engagement Letter, Jacoboni expressly agreed that (1) he was not guaranteed to make money on the investments, (2) he was subject to market risks for both loss and reward, and (3) tax results were not guaranteed.. (Exhibit A, ¶¶ 14, 21 and Exhibit 4 attached thereto). Those terms make clear that KPMG did not guarantee the capital losses claimed on Jacoboni's 1997 tax return. Without such a guarantee, tax savings do not represent the benefit of the parties' bargain, and they are not recoverable under Jacoboni's contract-based claims. Contract-based damages seek "to place the plaintiff in the position he would be in if the contract had been fulfilled." *Ashland Oil, Inc.*, 269 So. 2d at 723. Although contract damages may represent a broader measure of recovery than that available for torts, they cannot in this case include an award for back taxes paid to the IRS.

Jacoboni seeks to sidestep the terms of the Engagement Letter by alleging that KPMG orally guaranteed the tax savings at issue. (*See, e.g.*, Exhibit A, ¶ 10). However, such an alleged oral guarantee directly contradicts the terms of the written agreement. Thus, the parol evidence rule bars the use of the alleged oral guarantee made prior to or contemporaneous with Jacoboni's July 30, 1998 execution of the Engagement Letter.[5] *Carlon, Inc. v. Southland Diversified Co.*,

---

[5]     Jacoboni may try to avoid the Engagement Letter by arguing that he signed it under duress. Under Florida law, however, the defense of duress is available only if "the purported victim's will was so overcome as to deprive him of free choice." *City of Miami v. Kory*, 394 So. 2d 494, 497 (Fla. Dist. Ct. App. 3d 1981). Where a claimaint has merely made a "deliberate and considered choice between alternatives" -- as Jacoboni did in choosing to sign the Engagement Letter rather than forego the potential tax benefits of the FLIP strategy -- a claim of duress is unavailable as a matter of law. *Id.* at 497-98.

381 So. 2d 291, 293 (Fla. 4th DCA 1980); *Manufacturers' Leasing Ltd. v. Florida Development & Attractions, Inc.*, 330 So. 2d 171, 172-73 (Fla. 4th DCA 1976). The court in *Carlon, Inc.* explained the purpose and application of Florida's parol evidence rule as follows:

> To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. . . . It is established in Florida that presentations, negotiations and conversations which precede and accompany the making of a contract are presumed to have merged in the contract.

381 So. 2d at 293.

Moreover, Jacoboni cannot evade the effect of the parol evidence rule by claiming fraud in the inducement or promissory estoppel. "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract." *Advanced Marketing Systems, Inc. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla 4th DCA 2002). Thus, "promissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." *Id.* Likewise, "a party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Id.*

The Engagement Letter between Jacoboni and KPMG states that KPMG did not guarantee that Jacoboni would receive favorable tax treatment. Thus, there is no permissible basis for recovery of expected tax savings under Jacoboni's contract-based theories of recovery.

### C.     Jacoboni Cannot Recover Damages For Interest Paid To The IRS

Interest is not recoverable because it is "not . . . really a damage suffered by [the taxpayer] at all, but a return by him of what otherwise would be a windfall resulting from his opportunity to use money to which he was not entitled." *Freschi v. Grand Coal Venture*, 767 F.2d at 1051; *see also Loftin*, Order of November 12, 2003, p. 6; *Securities Group 1980*, 124

15

B.R. at 902-03; *Orsini v. Bratten*, 713 P.2d 791, 794 (Alaska 1986); *Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67, 559 N.Y.S.2d 312, 315 (1990). Any interest to be paid by Jacoboni to the IRS would represent a payment for his use of taxes during the period after the taxes came due and before they were paid. As such, interest is neither damages nor a proper element of damages. *Id.* [6] In addition, Jacoboni's claim for interest is speculative, because he has sought an abatement from the IRS. Thus, he may owe no interest. (Exh. E, p. J2058).

### D. Jacoboni Cannot Recover Damages For Back Taxes And Interest Because He Voluntarily Chose To Settle With The IRS

KPMG is entitled to summary judgment on Jacoboni's claims for taxes and interest because he voluntarily settled with the IRS before the conclusion of the audit process. *See Chipman v. Cronin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992); *Jones v. Law Firm of Hill and Ponton*, 223 F. Supp. 2d 1284, 1288 (M.D. Fla. 2002). In *Chipman*, plaintiff Chipman sued his former lawyers claiming that their withdrawal from representing him caused him to "lose monetary damages in an age discrimination case." *Id.* The Court of Appeals affirmed summary judgment in favor of the law firm, holding that "any loss of these damages must be attributable to Chipman himself, since he *chose to voluntarily chose to voluntarily accept his former employer's settlement offer.*" *Id.*

This case is no different. Jacoboni voluntarily accepted the government's offer to settle; his damages, if any, are self-inflicted. Jacoboni testified that, based on advice from other

---

[6]     In *Jones*, 1992 WL 300845, *23, this Court awarded damages for "interest differential" -- the difference between the amount of interest paid by plaintiffs to the IRS and the amount of interest plaintiffs would have earned had they placed their tax "savings" in a reasonable investment. Based on the authorities cited above, KPMG submits that Jacoboni is not entitled to recover any portion of his interest payments. However, even if the Court were inclined to award such an interest differential, Jacoboni has not offered and cannot offer any evidence as to such amount. Without evidence as to this type of alleged harm, such losses are too speculative to be awarded as damages. *Id.*; *see also Kane*, 916 F.2d at 647.

professionals, he determined that there was "no way that an audit could be won or litigation against IRS could be won, [and that] *I made the decision* to go to the IRS and try to be a citizen of the United States and pay my taxes, try to figure out what I owed them and what they felt that I owed them." (Exhibit C, p. 107)(emphasis added). KPMG cannot be held liable for damages caused by Jacoboni's voluntary decision to pay taxes without completely pursuing the audit processes and without seeking judicial review of the IRS' position.

### E. Jacoboni Cannot Recover Damages For His Alleged Net Investment Loss And Audit Fees

Jacoboni cannot recover damages for his alleged net investment loss of $1,826,000. (Exhibit F, pp. 5-6). Although Jacoboni lost the amount of his investment, he acknowledged in the Engagement Letter that: "No one has provided you with any assurances or guarantees that you will make money in any of these transactions. You are at all times subject to market risks for both loss and reward."" (Exhibit A, ¶¶ 14, 21 and Exhibit 4 attached thereto). Jacoboni further agreed that "KPMG shall have no liability to you for any special, incidental or consequential damages, including without limitation loss of profits, even if KPMG has been advised of the possibility of such damages." *Id.*

Likewise, Jacoboni cannot recover the cost of the IRS audit. Anyone is subject to audit, and no one could claim to rely on a representation that he would not be audited. KPMG did not cause Jacoboni to be audited. *Heinold*, 651 F. Supp at 1412 ("RICO confers a cause of action only when the injury to business or property suffered by a plaintiff is caused by the conduct constituting the RICO violation."). Nor is there any evidence or even an allegation that KPMG guaranteed that he would not be audited. *Ashland Oil, Inc.*, 269 So. 2d at 723 (In actions for breach of contract, the aim is "to place the plaintiff in the position he would be in if the contract had been fulfilled."). In fact, Jacoboni has admitted that he knew that he could be audited.

(Exhibit C, pp. 238-239). He seeks a departure from the American Rule that legal fees and litigation costs are borne by each party.

### F. Jacoboni's Claims Fail Because He Cannot Establish Reasonable Reliance

KPMG is entitled to summary judgment on Jacoboni's civil RICO, fraud, fraud in the inducement, and negligent misrepresentation claims because, as a matter of law, Jacoboni cannot establish reasonable reliance. In a civil RICO case, a plaintiff alleging fraud as a predicate act must show that he reasonably relied to his detriment on misrepresentations made in furtherance of the scheme. *Green Leaf Nursery v. E.I. DuPont DeNemours & Co.*, 341 F.3d 1292, 1306-07 (11th Cir. 2003)("[T]o establish a RICO fraud claim Plaintiffs must make the same showing of reasonable reliance that is required for common law fraud."). The same standard applies with respect to Jacoboni's state law claims alleging fraud, fraud in the inducement, and negligent misrepresentation. "Without justifiable reliance, there can be no actionable fraud." *Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 4th DCA 1999); *see also Morgan v. W.R. Grace & Co.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000)(Negligent misrepresentation requires "'pecuniary loss' caused by justifiable reliance upon the false information.").

A plaintiff cannot establish reasonable reliance as a matter of law where, as here, the plaintiff has received written documentation from the defendant contrary to the alleged oral misrepresentations. *Hillcrest Pacific Corp.*, 727 So. 2d at 1057-58; *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542-43 (Fla. 5th DCA 2003); *Tevini v. Roscioli Yacht Sales*, 597 So. 2d 913, (Fla. 4th DCA 1992); *First Union Discount Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 846 (11th Cir. 1993). In *Hillcrest*, for example, the court held:

> Although Pacific alleges that the appellees misrepresented the "price" of the Property, the price is clearly stated in the Agreement. . . . A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.

850 So. 2d at 1056. Similarly, in *Tevini*, the court explained:

> The claimed negligent misrepresentation on which buyers based
> their action against the broker was solely the broker's statement
> that it understood that the seller was the owner. But that is one of
> the very "details of the VESSEL" that the broker did not warrant
> and which is covered by the buyers' agreement. . . .In the face of
> paragraph 5 of the purchase contract, no reliance of the buyers on
> statements of title by the broker could possibly be justifiable. *To
> hold otherwise is to invite contracting parties to make agreements
> of the kind in suit and then avoid them by simply taking the stand
> and swearing that they relied on some other statement.*

597 So. 2d at 914 (emphasis added).

In this case, Jacoboni cannot establish reasonable reliance for the same reason. It is
undisputed that, in September 1997, Jacoboni received written documentation -- the Engagement
Letter -- that is expressly contrary to any oral misrepresentations allegedly made by KPMG to
Jacoboni with respect to the FLIP Strategy. (Exhibit A, ¶ 14). It is also undisputed that on July
30, 1998, Jacoboni signed the Engagement Letter, confirming his agreement to the terms and
conditions set forth therein. (Exhibit A, ¶¶ 14, 21 and Exhibit 4 attached thereto). The
Engagement Letter informed Jacoboni that (1) he was not guaranteed to make money on the
investments, (2) he was subject to market risks for both loss and reward, and (3) tax results were
not guaranteed. *Id.* Because "a party may not recover in fraud for an alleged false statement
when proper disclosure of the truth is subsequently revealed in a written agreement between the
parties," Jacoboni's civil RICO, fraud, fraud in the inducement, and negligent misrepresentation
claims fail as a matter of law. *Taylor Woodrow Homes Florida, Inc.*, 850 So. 2d at 542-43.

**G.      Jacoboni's Florida DUTPA Claim Is Barred By The Statute Of Limitations**

Jacoboni contends that KPMG violated the Florida DUTPA based on alleged deceptive

practices in "marketing" the FLIP Strategy. (Exhibit A, ¶¶ 89-94). This claim should be

dismissed because it is barred by the four year statute of limitations set forth in Fla. Stat.

§ 95.11(3)(f).

The delayed discovery rule does not extend the statute for DUTPA claims. *Yusuf*

*Mohamad Excavation, Inc. v. Ringhaver Equip. Co.*, 793 So. 2d 1127 (Fla. 5th DCA 2001).

Rather, the four-year period begins to run "when the last element of the cause of action occurs."

*Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002). Jacoboni admits that KPMG's "marketing"

of the FLIP Strategy was "carried out from September to the end of 1997" and that such

"marketing" efforts could not have extended beyond "March 23, 1998, [which is] *after the*

*KPMG/QA Tax Strategy had been effectuated*." Exhibit A, ¶¶ 9, 13 (emphasis added). The four-

year statute of limitations, therefore, started running at the very latest by March 23, 1998.

Because Jacoboni did not file his initial Complaint until more than four years later -- April 26,

2002 -- his DUTPA claim is time barred and should be dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, KPMG respectfully requests this Court to grant its Motion for

Summary Judgment.

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail
to **FRANK A. HAMNER, ESQUIRE**, Gray, Harris & Robinson, P.A., Suite 1400, 301 East
Pine Street, P.O. Box 3068, Orlando, FL 32802-3068 and **CAMPBELL KILLEFER,
ESQUIRE**, Venable LLP, Terrell Place, 575 7th Street NW, Washington, D.C. 20004-1601, this
24th day of November, 2003.

| | |
|---|---|
| JAMES T. PHALEN, ESQUIRE | W.L. KIRK, JR., ESQUIRE |
| KEVIN M. DINAN, ESQUIRE | Florida Bar No. 0111973 |
| KING & SPALDING LLP | MICHAEL D. BEGEY, ESQUIRE |
| 1730 Pennsylvania Avenue, N.W. | Florida Bar No. 0120928 |
| Washington D.C. 20006-4706 | RUMBERGER, KIRK & CALDWELL |
| Telephone: (202) 737-0500 | A Professional Association |
| JOSEPH B. HAYNES, ESQUIRE | Post Office Box 1873 |
| KING & SPALDING LLP | Orlando, Florida 32802-1873 |
| 191 Peachtree Street | Telephone: (407) 872-7300 |
| Atlanta, Georgia 30303 | Telecopier: (407) 841-2133 |
| Telephone: (404) 572-4600 | Counsel for Defendant KPMG LLP |

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

EXHIBITS

# ** REFER TO COURT FILE **