FILED

03 DEC -8 PM 3: 57

CLERK, _____ ___RT
MIDDLE _____ FLORIDA
ORL_____ A

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

|  |  |  |
|---|---|---|
| JOSEPH J. JACOBONI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:02-cv-510-Orl-22DAB |
| | ) | |
| KPMG LLP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF JOSEPH J. JACOBONI'S OPPOSITION TO DEFENDANT KPMG LLP'S
## DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Frank A. Hamner (Fla. Bar No. 0059153)
Richard Mitchell (Fla. Bar No. 0168092)
GRAY, HARRIS & ROBINSON, P.A.
Suite 1400, 301 East Pine Street
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880 Telephone
(407) 244-5690 Facsimile

and

Campbell Killefer
Damon W.D. Wright
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4800 Telephone
(202) 344-8300 Facsimile

Dated: December 8, 2003          **Counsel for Plaintiff Joseph J. Jacoboni**

171

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

ARGUMENT ...........................................................................6

I.     JACOBONI JUSTIFIABLY RELIED ON KPMG'S REPRESENTATIONS ........... 6

II.    THE PAROL EVIDENCE RULE DOES NOT BAR JACOBONI'S EVIDENCE OF
       KPMG'S ORAL REPRESENTATIONS BECAUSE KPMG FRAUDULENTLY
       INDUCED AND COERCED HIM TO SIGN THE AFTER-THE-FACT
       ENGAGEMENT LETTER ...................................................... 9

III.   JACOBONI'S FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
       CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS ................10

IV.    BY CREATING AN EXPECTATION THAT ITS TAX STRATEGY HAD VALUE,
       KPMG CAUSED JACOBONI TO SUFFER DAMAGES MEASURED BY THE
       DIFFERENCE BETWEEN THE VALUE AND THE STRATEGY'S TRUE
       WORTH. ..................................................................12

       A.    Jacoboni's Evidence Supports a Recovery of Benefit of the Bargain
             Damages. .........................................................12

       B.    KPMG Cannot Escape RICO Liability For Causing Jacoboni's
             Benefit Of The Bargain Damages. ..................................14

       C.    Jacoboni's Settlement with the IRS Does Not Insulate KPMG From
             Liability for Benefit of the Bargain Damages ......................17

       D.    Because Courts Look to the Facts of Each Case, KPMG Overstates Its
             Argument that Courts Must Prohibit Damage Awards Measured by
             Reference to a Tax Liability. ......................................19

V.     JACOBONI MAY RECOVER THE INTEREST ON TAXES AS DAMAGES .......23

VI.    JACOBONI MAY RECOVER OUT OF POCKET DAMAGES. ...................25

CONCLUSION ........................................................................25

INDEX OF EXHIBITS

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, 477 U.S. 242 (1986) ........................................................... 6

Ashland Oil Inc. v. Pickard, 269 So.2d 714 (Fla. 1972) ......................................... 13, 14

Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784 (Fla. 1993) ................. 9

Baker v. Bennett, 603 So.2d 928 (Ala. Sup. Ct. 1992) .................................................. 23

Bancroft v. Indemnity Ins. Co. of North America, 203 F.Supp. 49 (W.D. La. 1962) ................. 23

Benevento v. Life USA Holding, Inc. 61 F.Supp.2d 407 (E.D.Pa.1999) ......................... 7

Bivens Gardens Office Building, Inc., v. Barnett Banks of Florida,
    140 F.3d 898 (11th Cir. 1998) ................................................................................ 14

DCD Programs Ltd. v. Leighton, 90 F.3d 1442 (9th Cir. 1996)............................... 19, 20

DuPuis v. 79th Street Hotel, Inc., 231 So.2d 532 (Fla. 3d DCA 1970) ......................... 14

Fleischauer v. Feltner, 879 F.2d 1290 (6th Cir. 1989)................................................... 17

Freschi v. Grand Coal Venture, 767 F.2d 1041 (2d Cir. 1985) .................................... 24

Gregg v. U.S. Industries, Inc., 887 F.2d 1462 (11th Cir. 1989) ................................... 13

Hobbley v. Sears, Roebuck & Co., 450 So.2d 332 (Fla. 1984)..................................... 14

Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) ......................... 14

In Re Zimmerman, 204 B.R. 84, 87 (M.D. Fla. 1996) .............................................. 7, 8

Jobe v. Int'l Ins. Co., 933 F.Supp 844 (D. Ariz. 1995) ................................................. 23

Jones v. Childers, 1992 WL 300805 (M.D. Fla. 1992), aff'd in pertinent part,
    18 F.3d 899 (11th Cir. 1994) ........................................................................... 20, 21

King v. Neal, 19 P. 3d 899 (Okla. Dist. Ct. App. 2001)................................................ 23

L.S.T. Inc., v. Crow, 834 F. Supp. 1355 (M.D. Fla. 1993) rev'd on other grounds by
    49 F.3d 679 (11th Cir. 1995) ................................................................................. 16

Lane v. MRA Holdings, LLC, 242 F.Supp 2d 1205 (M.D. Fla. 2002) (J. Conway)...................... 1

Laney v. American Equity Investments Life Ins., 243 F.Supp.2d 1347, 1354 (M.D.Fl. 2003) ... 13

Loftin v. KPMG, LLP, et al., 2003 WL 22225621 (S.D. Fla. 2003) ............................. 21

Maiz v. Virani, 253 F.3d 641 (11th Cir. 2001) ................................................................. 15

Natural Kitchen, Inc. v. American Transworld Corp., 449 So.2d 855 (Fla. 1984) ...................... 14

Nordyne v. Florida Mobile Home Supply, 625 So. 2d 1283 (Fla. 1993) ..................................... 13

O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001) ................................................. 6

Securities Group 1980 v. Dayton Securities Assoc., 124 B.R. 875 (Bankr. M.D. Fla. 1991)...... 20

Stone v. Kirk, 8 F.3d 1079 (6th Cir. 1993) ..................................................................................... 20

Taylor Woodrow Homes Florida, Inc. v. 5/46-A Corp., 850 So. 2d 536 (Dist. Ct. App. Fla. 2003) ...................................................................................................................................................... 9

Tinker v. De Maria Porsche Audi, Inc., 459 So. 2d 487 (Fla. 1984) ............................................. 9

U.S. v. KPMG LLP, 237 F.Supp. 35 (D.D.C. 2003) and 2003 WL 2236072 (D.D.C. 2003) ........ 2

United States v. KPMG LLP, Case No. 1:02MS00295 (D.D.C.) (C. J. Hogan) ............................ 2

Vogt v. Abish, 663 F.Supp 321 (S.D.N.Y. 1987) ......................................................................... 22

Williams v. Bear Stearns & Co., 725 So. 2d 397 (Fla. 1998) ........................................................ 6

Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip. Co., 793 So.2d 1127 (Fla. 2001)........... 11

**Statutes**

Fla. Stat. § 95.11(3)(f)................................................................................................................. 11

**Other Authorities**

Coordinating Issue All Industries 'Basis-Shifting' Tax Shelter" UIL NO. 9300.18-00 (effective December 3, 2002)............................................................................................................................ 5

In the Matter of KPMG LLP Certain Auditor Independence Issues ............................................... 3

IRS Announcement 2002-97 2002 43 IRB (Oct. 28, 2002) ........................................................... 4

**Rules**

Fed. R. Civ. P. 26(a)(2)................................................................................................................... 5
Fed. R. Civ. P. 56............................................................................................................... passim
Fed. R. Civ. P. 56(c) ....................................................................................................................... 6

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Joseph J. Jacoboni ("Jacoboni") submits this Opposition to Defendant KPMG LLP's ("KPMG") Dispositive Motion for Summary Judgment. KPMG mischaracterizes Jacoboni's factual allegations and utterly fails to meet its Rule 56 burden to show no genuine issues of material facts on which a reasonable jury could return a verdict for Jacoboni. See Lane v. MRA Holdings, LLC, 242 F.Supp.2d 1205, 1211 (M.D. Fla. 2002) (J. Conway).

Jacoboni's Declaration, attached as Exhibit 1 to this Opposition, and the twenty-two (22) other exhibits listed on the Index of Exhibits accompanying this Opposition, show that Jacoboni vigorously contests many issues of material fact.[1] The disputed nature of the facts is also shown in Jacoboni's "Statement of Material Facts In Dispute," filed with this Opposition in accordance with section II.H.1 of this Court's Amended Case Management and Scheduling Order.

As we approach the end of 2003, this has been a very bad year for KPMG's tax shelter business. Jacoboni filed his Complaint in April 2002 as the first lawsuit challenging KPMG's fraudulent sale, delivery and concealment of abusive tax shelters now known as the Foreign Leveraged Investment Program ("FLIP") and the Offshore Portfolio Investment Strategy ("OPIS"). After two rounds of briefing, this Court denied KPMG's motion to dismiss Jacoboni's Second Amended Complaint by Order dated January 14, 2003 (Doc. 83) (defendant QA Investments LLC was dismissed without prejudice to allow a new lawsuit if facts warrant). In light of KPMG's refusal to make discovery, Jacoboni moved to compel discovery. By Order dated January 24, 2003, U.S. Magistrate Judge Baker granted Jacoboni's motion and emphasized:

> A final word is in order. <u>Plaintiff has stated a RICO claim and has identified numerous other clients of KPMG who have either brought similar lawsuits or have been alleged to have been defrauded by KPMG.</u> The IRS is also

---

[1]    By Order dated December 4, 2003 (Doc. 169), this Court granted Jacoboni's unopposed motion to file a memorandum of law in excess of twenty pages. This Opposition complies with the requested twenty-five (25) pages. By that same Order, the Court granted Jacoboni's unopposed motion to file under seal various documents.

> investigating KPMG and certain aspects of that investigation are part of the public
> record. The shroud of secrecy that KPMG kept over the FLIP and OPIS
> transactions while they were underway has been lifted. KPMG should recognize
> that its role in these transactions will be examined with no presumption of
> confidentiality, and its legal responsibility arising from the transactions will be
> determined based on all available relevant (non privileged) evidence.

Order of January 24, 2003 (Doc. 89) at 4 (emphasis added). KPMG filed Objections to

Magistrate Judge Baker's Order, in particular on his "shroud of secrecy" remark. This Court

overruled KPMG's Objections and specifically held that "Judge Baker's 'shroud of secrecy'

remark is supported by the record." Order of February 18, 2003 (Doc. 102) at 3. Once KPMG's

shroud of secrecy was judicially lifted, Jacoboni's case was greatly enhanced and KPMG has

faced increased litigation and regulatory scrutiny.

     The U.S. Department of Justice filed an IRS summons enforcement case in July 2002

against KPMG for its role as "promoter" of many tax shelters, including FLIP and OPIS. See

Jacoboni Decl. ¶ 15. United States v. KPMG LLP, Case No. 1:02MS00295 (D.D.C.) (C. J.

Hogan)("IRS Petition"). The Declaration of Internal Revenue Agent Michael Halpert

accompanying the IRS Petition revealed that approximately 160 KPMG clients had invested in

FLIP and OPIS. A true copy of the Halpert Declaration is attached as Exhibit 11 to this

Opposition. U.S. District Judge Hogan and former U.S. Magistrate Judge Attridge found that

many of KPMG's documents withheld on privilege grounds should be disclosed. U.S. v. KPMG

LLP, 237 F. Supp. 35 (D.D.C. 2003) and 2003 WL 2236072 (D.D.C. 2003). Jacoboni's case and

the IRS summons enforcement case against KPMG have prompted at least 17 other FLIP or

OPIS (known as "son of FLIP") lawsuits against KPMG around the country.

     In Jacoboni's case, 26 depositions have been taken or will soon be completed. Among

those deposed are four other "RICO victims" who were defrauded into FLIP strategies and will

testify at the Jacoboni trial -- Daniel Perez of Texas (who already favorably settled his FLIP

litigation against KPMG, as summarized at the end of paragraph 13 of the Jacoboni Declaration), William Rogers of South Carolina, Michael Sullivan of Florida, and Robert Green of North Carolina. The increasing federal and state court litigation concerning KPMG's tax shelter business is matched by increased regulatory scrutiny. The IRS summons enforcement case revealed KPMG's collaboration with and client referrals from First Union National Bank (now Wachovia), also the subject of a U.S. Securities and Exchange Commission investigation concerning KPMG's auditor independence (In the Matter of KPMG LLP Certain Auditor Independence Issues). More recently, two U.S. Senate committees have conducted public hearings focusing on KPMG's tax shelter promotion, including FLIP and OPIS.

The Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs conducted public hearings on November 18 and 20, 2003. A true copy of the Subcommittee's report entitled "U.S. Tax Shelter Industry: The Role of Accountants, Lawyers, and Financial Professionals -- Four KPMG Case Studies: FLIP, OPIS, BLIPS and SC2" is attached as Exhibit 16 to this Opposition. Along with other KPMG witnesses, Jeffrey Eischeid testified that KPMG has stopped promoting and selling FLIP and OPIS which he described as "look-alike" and "aggressive tax strategies" "designed to be sold to multiple clients." A true copy of the KPMG written testimony is attached as Exhibit 17 to this Opposition. In addition, the Senate Finance Committee conducted hearings on October 21, 2003, on the tax shelter industry. A KPMG Senior Manager, placed on administrative leave by KPMG, testified about the pressure on KPMG professionals to "sell" tax shelter products and about the fraudulent practices committed upon KPMG's clients. A true copy of Michael Hamersley's written testimony is attached as Exhibit 23 to this Opposition.

3

Like nearly all of KPMG's FLIP and OPIS clients, Jacoboni elected to participate in the IRS global settlement program set forth in IRS Announcement 2002-97, 2002 43 IRB (Oct. 28, 2002). He has signed a "Closing Agreement" with the IRS, which obligates him to pay approximately $9.7 million in taxes and interest . True copies of Announcement 2002-97 and Jacoboni's IRS closing agreement are attached as Exhibits 12 and 20 to this Opposition.

The wisdom of Jacoboni's settling with IRS is buttressed by KPMG documents unearthed in discovery and the IRS's own legal analysis. For example, an internal KPMG document labeled "Generating Capital Losses" shows how FLIP was a sham transaction totally predetermined from the outset. See Exhibit 13 attached to this Opposition. There are also dozens of KPMG memoranda and emails which describe KPMG aggressively "selling" FLIP while concealing that the product was flawed. True copies of a sample of such KPMG tax "product" documents are attached as Exhibit 14 to the Opposition. The IRS issued its legal analysis of how FLIP and OPIS are disallowed "tax shelters" in the "Coordinating Issue All Industries 'Basis-Shifting' Tax Shelter UIL NO. 9300.18-00" (effective December 3, 2002), a true copy of which is attached as Exhibit 15 to the Opposition.

KPMG's liability and Jacoboni's damages suffered are addressed in Rule 26(a)(2) reports of two expert witnesses on behalf of Jacoboni.[2] First, the report of Professor Bernard Wolfman, the Fessenden Professor of Law at the Harvard Law School, sets forth KPMG's duty of care and how KPMG breached its duty in providing improper tax law advice and negligent tax return preparation. KPMG has not challenged any opinions of Professor Wolfman. A true copy of the expert report of Professor Wolfman is attached as Exhibit 21 to this Opposition. Second, the

---

[2] Remarkably, KPMG has designated as "Confidential" various portions of the expert reports of Jacoboni's experts. Jacoboni disputes KPMG's "Confidential" designation as unsupported and unreasonable. Nevertheless, Jacoboni is duty bound to comply with the "Stipulated Confidentiality Agreement" between the parties and therefore has filed under seal the Rule 26(a)(2) expert reports of Bernard Wolfman and Bruce G. Dubinsky.

report of Bruce G. Dubinsky of Klausner Dubinsky & Associates, a certified public accounting and forensic accounting firm, addresses how FLIP lacked economic substance and the features of a true "investment" and describes Jacoboni's damages. A true copy of Mr. Dubinsky's expert report is attached as Exhibit 22 to this Opposition. KPMG filed a separate motion to exclude the expert testimony of Mr. Dubinksy. That motion is devoid of merit, as explained in "Plaintiff's Opposition to Defendant KPMG's Motion to Exclude the Expert Testimony of Bruce G. Dubinsky" separately filed this day.

In KPMG's Dispositive Motion for Summary Judgment (KPMG Mem."), KPMG's arguments are arranged illogically, first raising many damages issues and then a variety of liability issues. In addition, KPMG filed only a three-page "Statement of Material Facts as to Which There Is No Genuine Issue for Trial," which Jacoboni vigorously disputes. This Opposition first sets forth the Court's standard for summary judgment under Fed.R.Civ.P. 56. We then address the liability issues of Jacoboni's justifiable reliance on KPMG's representations; why the parol evidence rule under Florida law does not bar evidence of KPMG oral representations because KPMG fraudulently induced and coerced Jacoboni to sign an after-the-fact engagement letter; and why Jacoboni's Florida Deceptive and Unfair Trade Practices Act claim is not barred by the statute of limitations.

After showing the many genuine issues of material fact on liability, this Opposition next responds to KPMG's damages arguments. In particular, Jacoboni presents evidence on why benefit of the bargain damages are appropriate where KPMG "sold" a product represented to have a specific value; why he is entitled to recover benefit of the bargain damages under his Racketeering Influenced & Corrupt Organizations Act ("RICO") claim; why Jacoboni's settlement with the IRS does not insulate KPMG from liability; why Jacoboni is entitled to

interest on taxes as an element of his damages; and why Jacoboni is entitled to out of pocket damages.

## ARGUMENT

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c). A factual dispute is genuine and summary judgment not appropriate, if "a reasonable jury could return a verdict for the non-moving party." Lane, 242 F.Supp.2d at 1211. A fact is material if it might affect the outcome of the case. Id. As the moving party, KPMG has the burden to show that Jacoboni has raised no genuine issues of material fact. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). The court must view all evidence in the light most favorable to Jacoboni as the non-movant and all reasonable doubts must be resolved in his favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Lane, 242 F.Supp.2d at 1212. Under this well established standard, KPMG has not satisfied its burden for summary judgment.

## I.    JACOBONI JUSTIFIABLY RELIED ON KPMG'S REPRESENTATIONS.

Whether Jacoboni justifiably relied on KPMG's misrepresentations should not be decided on summary judgment, but is instead an issue for the jury. See Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (Fla. 1998) (summary judgment inappropriate on fraud claim because issue of reasonable reliance is factual and one for the jury). Because there is clearly a genuine issue of material fact regarding KPMG's misrepresentations, summary judgment is not appropriate.

Jacoboni had every reason to rely on KPMG. Although he was a successful entrepreneur and executive, Jacoboni did not earn a college degree and was unsophisticated in tax matters. Jacoboni Decl. ¶ 3. Jacoboni's regular bank, First Union, recommended KPMG, which Jacoboni knew by reputation as one of the "Big 6" accounting firms. Id., ¶ 4. The two KPMG partners

6

with whom Jacoboni primarily dealt, Carolyn Branan and Dale Baumann of KPMG's office in
Charlotte, North Carolina, were very impressive and persuasive on the tax strategy being
completely legal and "no lose" as it used "IRS's own rules against it." Id., ¶ 5. The KPMG
professionals insisted that Jacoboni not disclose the strategy to anyone else because it was
proprietary, particularly not to accountants or other professionals. In fact, KPMG refused to
explain the strategy to Jacoboni's regular accountant, Phil Blake. Id., ¶ 6. As Jacoboni testified
at his deposition, KPMG's "whole theme was, this was 'bullet-proof' this would pass an IRS
audit." Id., ¶ 5. Simply put, Jacoboni trusted KPMG.

     Jacoboni justifiably relied on KPMG's misrepresentations. In Benevento v. Life USA
Holding, Inc., 61 F.Supp.2d 407, 416, 417 (E.D.Pa.1999), the U.S. District Court for the Eastern
District of Pennsylvania gave the test for finding reasonable reliance under Florida fraud law:

> It is true that for a plaintiff to prevail on claims for fraud (or intentional
> misrepresentation) and negligent misrepresentation under the laws of
> Pennsylvania, New Jersey and Florida, he or she must prove justifiable reliance
> upon the misrepresentation at issue. Determining whether reliance on a
> misrepresentation is justified is generally dependent, at least in part, upon such
> factors as the respective intelligence and experience of the parties, the relationship
> between them and the opportunities, if any, to ascertain the truth of the
> representation at issue.

(Emphasis added.). Likewise, the U.S. Bankruptcy Court for the Middle District of Florida has
found it reasonable for an inexperienced investor such as Jacoboni to rely on the tax advice of his
accountants. In Re Zimmerman, 204 B.R. 84, 87 (M.D. Fla. 1996). There, the government
attempted to exempt taxes from bankruptcy discharge on the ground that the taxpayer filed a
fraudulent return by taking losses associated with tax shelters. Id. The taxpayer claimed that he
did not rely on his own judgment in setting up and taking deductions from these shelters, but
relied on the representations of his accountant. Id. at 88. Finding that the taxpayer's reliance
was reasonable, the Court explained that the taxpayer attempted to lessen the risk of his

investment by "hiring his own experts to assure him of some viability." Id. at 89.  Like this taxpayer, Jacoboni thought he could trust the KPMG experts.[3]

Further, KPMG's Engagement Letter does not support its argument.  Significantly, the letter does not – as KPMG claims – provide that "tax results were not guaranteed" (KPMG Mem. at 19).  In fact, the letter specifically states that that "the tax opinion issued by KPMG does not guarantee tax results" (emphasis added).  Whether or not the "tax opinion" guaranteed tax results, through numerous other communications in fall 1997 and after, KPMG assured Jacoboni that FLIP was completely legal, would meet with IRS approval, and was tax advice with the value of legitimately eliminating his capital gains tax liability.  Further, it was not until May 1998, months after Jacoboni had paid KPMG and the financial transactions underlying FLIP were complete, that KPMG sent Jacoboni the Engagement Letter.[4]  Without disclosing to Jacoboni that KPMG had identified that FLIP was an "aggressive tax strategy" lacking "economic substance," in June 1998 KPMG then lied to Jacoboni to induce him to sign the letter.

Jacoboni and his lawyer Thomas Dixon have testified about the assurances and threats of KPMG's Carolyn Branan and Gregg Ritchie in June 1998.  KPMG assured Jacoboni that it was "on the hook" and financially responsible if the IRS ever questioned KPMG's tax advice.  KPMG further stated that, although Jacoboni had paid several million dollars for KPMG's tax product, KPMG would not prepare Jacoboni's tax return unless he signed the Engagement Letter and a Representation Letter.  See Jacoboni Decl. ¶¶ 7-9 and Exhibit 8 to this Opposition.  Based on KPMG's assurances and threats, Jacoboni signed the Engagement and Representation Letters in

---

[3]     KPMG expert Alan Westheimer has described that, as an early purchaser of FLIP, Jacoboni was a "pioneer" charting a "tax law" path for other future taxpayers to follow.  However, KPMG never informed Jacoboni that he was a "pioneer."  He did not want or ask to be a "pioneer."  He wanted legal and honest tax advice which he thought he had received.

[4]     Contrary to KPMG's assertion that it is undisputed that he received the Engagement Letter in September 1997 (KPMG Mem. 19), Jacoboni testified that he does not remember receiving it.  See Jacoboni Decl. ¶ 7.

July 1998 (sending them with a transmittal letter indicating his reliance on KPMG's oral demands and assurances).  Jacoboni Decl. ¶¶ 3-6.

Against these facts, KPMG's emphasis on <u>Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.</u>, 850 So.2d 536 (Dist. Ct. App. Fla. 2003) is misplaced.  There, plaintiff could not have reasonably relied on oral representations that were directly and unequivocally rebutted by written documents.  By contrast, Jacoboni was <u>never</u> sent any oral or written warning that FLIP was an "aggressive tax strategy," that he was a "pioneer," or that KPMG would not honor its assurances and commitments.  He was lied to in fall 1997 and then he was lied to again in June 1998.  Taking Jacoboni's lack of experience in tax matters, the fact that he trusted KPMG as his tax advisor and had little or no opportunity to ascertain the truth of KPMG's representations, Jacoboni reasonably and justifiably relied on KPMG.

## II.    THE PAROL EVIDENCE RULE DOES NOT BAR JACOBONI'S EVIDENCE OF KPMG'S ORAL REPRESENTATIONS BECAUSE KPMG FRAUDULENTLY INDUCED AND COERCED HIM TO SIGN THE AFTER-THE-FACT ENGAGEMENT LETTER.

While final agreements may not be contradicted by parol evidence, an "exception is made in actions alleging negligent misrepresentation, or otherwise, fraud in the inducement." <u>Baggett v. Electricians Local 915 Credit Union</u>, 620 So.2d 784, 785-86 (Fla. 1993).  Where a plaintiff was fraudulently induced into a contract, the parol evidence rule does not preclude admission of extrinsic evidence.  <u>Id</u>. at 786.  Moreover, "this exception to the parol evidence rule is also applicable when a general disclaimer clause is included in that contract." <u>Tinker v. De Maria Porsche Audi, Inc</u>., 459 So.2d 487, 492 (Fla. 1984).

The parol evidence rule does not bar Jacoboni's reliance on KPMG's fall 1997 intentional misrepresentations.  KPMG did not provide and he did not sign the Representation or Engagement Letters then, and the bargain reached between the parties was not cluttered by

KPMG's after the fact "paper trail."  Moreover, the parol evidence rule does not bar Jacoboni's

reliance on KPMG's June 1998 intentional misrepresentations.  Then, in an effort to insulate

itself from liability for having sold an illegal tax shelter, KPMG used additional fraud about the

purpose of the letters and KPMG's obligation to indemnify Jacoboni, as well as threats, to

swindle Jacoboni into signing the letters.  Jacoboni Decl. ¶¶ 7-9.  This was classic fraud in the

inducement.[5]

Moreover, the Engagement Letter does not support application of the parol evidence rule.

It states: "KPMG shall have no liability to you for any special, incidental or consequential

damages, including without limitation loss of profits, even if KPMG has been advised of the

possibility of such damages."  However, this general disclaimer does not excuse KPMG's fraud

in the inducement.  The letter then states: "You acknowledge that the tax opinion issued by

KPMG does not guarantee tax results, but rather provides that the tax treatment described in the

opinion is more likely than not to occur."  This language refers only to KPMG's "tax opinion"

(one communication) to be delivered later and does not permit KPMG to disavow its fall 1997

and later assurances that FLIP was completely legal, would meet with IRS approval, and was tax

advice with the value of legitimately eliminating the purchaser's capital gains tax liability.

## III.    JACOBONI'S FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

The statute of limitations for asserting a claim under the Florida Deceptive and Unfair

Trade Practices Act ("DUTPA") is four years.  See Fla. Stat. § 95.11(3)(f).  KPMG uses out of

---

[5]    In addition to the misrepresentations, no one from KPMG called or wrote Jacoboni to alert him that: since 1996, KPMG had taken steps to hide FLIP and its marketing materials from the IRS; in September 1997, KPMG officials concluded that FLIP was a "tax shelter" and should be registered with the IRS; in October 1997, KPMG reduced its selling FLIP because it violated the step transaction doctrine; in March 1998, KPMG's current Deputy Chairman criticized FLIP as leading to a "tax disaster"; or in April 1998, KPMG's agent (QA Investments LLC) had registered its version of FLIP as a tax shelter with IRS.  See Exhibits 13, 14, 16 and 23 attached to this Opposition.

context the phrase "March 23, 1998, <u>after the KPMG/QA Tax Strategy had been effectuated,</u>" from Jacoboni's Second Amended Complaint to assert that the statute of limitations started running on March 23, 1998. KPMG's argument is based on distorted reading of Jacoboni's allegations and contrary to all of the evidence in this case. Read in context, the quoted phrase clearly refers to the fact that the financial transactions underlying FLIP had been effectuated by March 23, 1998. The most important element of the FLIP tax strategy (and KPMG's fraudulent scheme) was KPMG's preparation of client tax returns containing the artificial capital loss. This was not done for Jacoboni until October 1998.

Moreover, the evidence establishes that KPMG's scheme to defraud continued well beyond 1998. For example, until August 17, 2001, KPMG concealed from clients the fact that the IRS was investigating KPMG's sale of FLIP and similar "basis-shifting" tax strategies. Jacoboni Decl. ¶¶ 12-13. Once this was apparent, KPMG sought to control the way in which Jacoboni and other FLIP and OPIS clients responded to the IRS. As Jacoboni's evidence and the Report of Permanent Subcommittee on Investigations show, KPMG was "mass-marketing" abusive tax shelters such as FLIP until as recently as 2002. The testimony of Jacoboni's four other RICO victims, as well as the 17 other FLIP and OPIS lawsuits, demonstrate the ridiculousness of KPMG's statement that its alleged scheme ended in March 1998.

Further, KPMG's argument that Florida's delayed discovery rule should not apply to the DUTPA and its reliance on <u>Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip. Co.</u>, 793 So. 2d 1127 (Fla. 2001) is misguided. In <u>Yusuf</u>, the court explained that the delayed discovery rule should apply to DUTPA claims based on fraud because "one should not be able to benefit from the expiration of the statute of limitations when the plaintiff's delay in filing suit is caused by the fraudulent conduct of the defendant." <u>Id</u>. Jacoboni's DUTPA claim is grounded in KPMG's

fraud. Second Amended Complaint, at ¶¶ 89-93. At the earliest, Jacoboni "knew or should have known" of KPMG's fraud in August 2001 when the IRS issued Notice 2001-45 disallowing FLIP and when Carolyn Branan of KPMG admitted to KPMG's cover-up. Jacoboni Decl. ¶¶ 12-13. Because his Complaint was filed less than a year later in April 2002, the four-year statute of limitations does not bar Jacoboni's DUTPA claim

## IV.    BY CREATING AN EXPECTATION THAT ITS TAX STRATEGY HAD VALUE, KPMG CAUSED JACOBONI TO SUFFER DAMAGES MEASURED BY THE DIFFERENCE BETWEEN THE VALUE AND THE STRATEGY'S TRUE WORTH.

It is misleading for KPMG to claim that Jacoboni seeks to recover his taxes as damages. Jacoboni seeks to recover damages that proximately result from KPMG failing to meet the "benefit of its bargain" with Jacoboni. Enriching itself, KPMG knowingly and deliberately caused Jacoboni to expect that he had purchased tax advice that had value – a value approximating the amount of his 1997 capital gains tax liability absent any tax strategy. In reality this advice was illegal and had no value. It is true that the amount of Jacoboni's damages is best measured by reference to the dollars that Jacoboni must now pay the IRS. However, there is a distinction between a plaintiff seeking to recover taxes as damages and a plaintiff seeking to recover benefit of the bargain damages which can be measured by a tax liability.

### A.    Jacoboni's Evidence Supports a Recovery of Benefit of the Bargain Damages.

Issues of fact preclude KPMG's request for summary judgment on Jacoboni's benefit of the bargain damages claim. According to KPMG's fraudulent representations, KPMG would generate a large capital loss that would offset and eliminate Jacoboni's capital gains tax liability. This expectation is demonstrated by KPMG's marketing materials entitled "Generating Capital Losses." See Exhibit 13. This expectation is demonstrated by KPMG's email correspondence,

reporting that Jacoboni wants to generate a $30 million capital loss. See Exhibit 4. This expectation is also demonstrated by Jacoboni and his attorney Thomas Dixon's deposition testimony reporting that KPMG said it was still "on the hook" and would be responsible if its advice and the capital loss were ever challenged by the IRS. See Jacoboni Decl., ¶ 9 and Exhibit 8 to this Opposition. This expectation is demonstrated by KPMG's reporting on Jacoboni's 1997 tax return that he had generated a $30 million capital loss that offset his capital gains.[6]

Benefit of the bargain or expectancy damages seek to award the plaintiff a sum that is equal to performance of the bargain. See Ashland Oil Inc. v. Pickard, 269 So.2d 714, 723 (Fla. 1972); Gregg v. U.S. Industries, Inc., 887 F.2d 1462, 1465 (11th Cir. 1989)  (benefit of the bargain is "the difference between what [plaintiff] would have received had the agreement with [defendant] been carried through to completion and what he actually received").  The goal is to place Jacoboni in the position he would have been in if the contract had been fulfilled or the misrepresentations that were made had been true.  Id.

To recover benefit of the bargain damages on his fraud claim, Jacoboni must show that this measure of damages compensates him more appropriately than out of pocket damages. Florida courts refer to this as the "flexibility test" to choose the most appropriate remedy.  See Nordyne v. Florida Mobile Home Supply, 625 So.2d 1283, 1286 (Fla. 1993); Laney v. American Equity Investments Life Ins., 243 F.Supp.2d 1347, 1354 (M.D.Fl. 2003) ("Under the benefit of the bargain rule, the plaintiff is entitled to the loss of its bargain, similar to a recovery on a warranty").  Either out of pocket or benefit of the bargain damages are used "depending upon

---

[6]    KPMG falsely reported that this capital loss was a "Long Term Capital Loss" (when it was in fact a "Short Term Capital Loss") and KPMG falsely reported the dates of financial transactions underlying the capital loss as "Various" (when in fact the transactions occurred on single dates).  KPMG made similar false and misleading entries in reporting the capital losses on tax returns of KPMG's other FLIP clients.  KPMG's false tax return preparation conduct was intended to conceal KPMG's FLIP product from the IRS and to minimize the chances of an IRS audit. KPMG hid its false tax return preparation conduct from its clients.

which is more likely to fully compensate the injured party." <u>Nordyne</u>, 625 So.2d at 1286.[7]  In a breach of contract claim, Jacoboni must show that the damages were "reasonably foreseeable" or within the contemplation of the parties at the time of contracting.  <u>Natural Kitchen, Inc. v. American Transworld Corp.</u>, 449 So.2d 855, 860 (Fla. 1984).  Thus, "the attempt is to place the plaintiff in the position he would be in if the contract had been fulfilled."  <u>Ashland Oil Inc.</u>, 269 So.2d at 723; <u>Hobbley v. Sears, Roebuck & Co.</u>, 450 So.2d 332, 333 (Fla. 1984) (accord).

KPMG did not deliver on its bargain and Jacoboni's damages were reasonably foreseeable.  KPMG proximately caused Jacoboni to purchase tax advice that was purported to have a certain value.  KPMG proximately caused Jacoboni to purchase tax advice that has been declared illegal and was worthless.  Jacoboni's The benefit of the bargain damages are the difference between what Jacoboni expected and what he received.

**B.    KPMG Cannot Escape RICO Liability For Causing Jacoboni's Benefit Of The Bargain Damages.**

To recover damages for an injury sustained from a RICO violation, a plaintiff must prove the violation proximately caused the plaintiff's injuries.  <u>Holmes v. Securities Investor Protection Corp.</u>, 503 U.S. 258, 267 (1992).  When the alleged RICO violations are mail and wire fraud, the Eleventh Circuit has held that plaintiff must have been a target of defendant's scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme.  <u>See</u> <u>Bivens Gardens Office Building, Inc., v. Barnett Banks of Florida</u>, 140 F.3d 898, 906 (11th Cir. 1998).  Further, once plaintiff establishes that his damages were proximately caused by defendant's predicate acts, Jacoboni may recover expectancy or benefit of the bargain type

---

[7]    KPMG asserts that traditional "benefit of the bargain" damages cannot be recovered under Florida fraud law (KPMG Mem. at 12).  KPMG is not correct.  <u>See</u> <u>Laney</u>, 243 F.Supp.2d at 1354 ("'if the fraudulent representation also amounts to a warranty, recovery may be had for the loss of the of the bargain, because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone") (quoting <u>DuPuis v. 79th Street Hotel, Inc.</u>, 231 So.2d 532, 537 (Fla. 3d DCA 1970)).

damages.  Maiz v. Virani, 253 F.3d 641, 662-663 (11th Cir. 2001).

The Eleventh Circuit's seminal RICO decision in Maiz supports Jacoboni's ability to

recover benefit of the bargain damages.  In Maiz, plaintiffs alleged that defendants committed

mail and wire fraud in furtherance of their scheme to defraud.  Id.  At trial, the jury agreed that

defendants' predicate acts rendered them liable under RICO.  Id. at 653.  On appeal, the Eleventh

Circuit affirmed holding that:

> [P]roximate cause was established.  The jury could have found (and presumably
> did find) that Defendants' RICO violations deprived the Plaintiffs of the use of
> their investment dollars, and that the Plaintiffs would have re-invested the funds if
> they had been available for use.

Id. at 664 n. 16.  At trial, plaintiffs' expert provided a calculation of the amount of money the

plaintiffs would have earned if the proceeds the defendants pocketed through their frauds had

been properly invested (if plaintiffs had received the benefit of the bargain).  Id. at 662.  On

appeal, Defendant asserted that lost value damages are not recoverable in a civil RICO action

and that the expert's lost value calculations were too speculative.  Id.  The Eleventh Circuit

disagreed, reiterating the holding in Holmes that:

> To recover damages for an injury sustained as a result of a RICO violation, a
> plaintiff must prove that the violation proximately caused a loss to its business or
> property.  The touchstone of the inquiry, in other words, is proximate cause; **there
> is no automatic rule against the recovery of any type of lost profits or lost
> value damages if proximate cause is shown.**

Id. at 662-663 (emphasis added).  Because defendants' mail fraud and wire fraud were targeted at

the plaintiffs and the predicate acts were in furtherance of the scheme to defraud which

proximately caused injury, plaintiffs were entitled to introduce and recover lost value damages.

Jacoboni's damages were proximately caused by KPMG's predicate acts of wire fraud and

mail fraud.  In his Declaration, Jacoboni describes in detail the many interstate phone calls,

facsimile transmissions, and documents in furtherance of KPMG's scheme to defraud sent by

U.S. mail.  See Jacoboni Dec., ¶¶ 5-10, 13.  As Jacoboni stated:

> All my phone calls with KPMG partners Branan, Baumann and Ritchie were interstate phone calls.  I received the Representation Letter and Engagement Letter via fax over interstate phone lines.  I was fraudulently induced and coerced to sign the letters and then return them to KPMG via U.S. mail.  Moreover, the eventual "concurring" tax opinion of the law firm Brown & Wood supporting the KPMG tax strategy was sent to me in August 1998 via U.S. mail.  In addition, the federal tax return for 1997 prepared by KPMG, which reflected the improper and fraudulent FLIP strategy, was sent to me via U.S. mail and I mailed it to the IRS.

Jacoboni Decl., ¶ 10.  KPMG's use of interstate phone calls, wire transmissions and U.S. mail to carry out its scheme to defraud led to the IRS audit of Jacoboni's 1997 tax return and the "lost value" damages he suffered from the FLIP strategy.

KPMG's argument is similar to the unsuccessful argument made by the Maiz defendants.  Without citing any RICO cases from this Circuit, KPMG asserts that: 1) Jacoboni has not proven the requisite causation to show he is entitled to lost value or expectancy damages; and 2) that missed opportunity damages are not cognizable under RICO. (KPMG Mem. 8-11).  KPMG's arguments are incorrect under the Eleventh Circuit law established in Maiz.  At bottom, defendants' argument in Maiz that lost value damages are not recoverable under RICO is the same as KPMG's argument.  Like the Maiz defendants, KPMG argues that these kinds of damages are "too speculative." Maiz, 253 F. 3d at 662.  As in Maiz, the evidence will establish that "a jury could find" that Jacoboni is entitled to damages for lost value.  See Jacoboni Decl. ¶11.  This issue creates "genuine issues of material fact" that should not be decided on summary judgment.  See L.S.T. Inc., v. Crow, 834 F. Supp. 1355 (M.D. Fla. 1993) rev'd on other grounds, 49 F.3d 679 (11th Cir. 1995) (existence and extent of damages from lost profits are questions properly answered by a trier of fact).

Further, as the Eleventh Circuit held in Maiz, "a plaintiff injured by civil RICO violations deserves a "complete recovery" therefore "in some cases expectancy damages might be

appropriate." Maiz, 253 F.3d at 664 (quoting Fleischauer v. Feltner, 879 F.2d 1290 (6th Cir. 1989)). Jacoboni deserves a complete recovery and expectancy damages are appropriate.

### C.    Jacoboni's Settlement with the IRS Does Not Insulate KPMG From Liability for Benefit of the Bargain Damages.

Jacoboni has signed a formal "Closing Agreement" with IRS obligating him to pay $6,468,294 in taxes plus approximately $3,234,000 in interest, in accordance with an IRS global settlement program. See Jacoboni Decl. ¶ 20, and Closing Agreement attached as Exhibit 20 to this Opposition. Jacoboni settled to avoid the "tax disaster" predicted by KPMG's head of International Tax Jeffrey Stein when he wrote his "Simon Says" email in March 1998 criticizing FLIP. See Exhibit 14. More than two years ago, the IRS disallowed capital losses attributable to FLIP in IRS Notice 2001-45. In its guidance on such "basis shifting" tax shelters, the IRS wrote a 24-page explanation of why FLIP and OPIS are disallowed. The IRS concluded that:

> Taxpayer's loss on Foreign Bank stock and options may be disallowed because the transaction as a whole lacks economic substance and business purposes apart from tax savings. . . . . Here [FLIP and OPIS are] no more than a series of contrived steps that affect an artificial loss on U.S. Taxpayer's disposition of Foreign Bank stock. The stock loss does not reflect real economic loss. Accordingly, the loss should be disallowed under I.R.C. § 165.

See Coordinated Issue All Industries "Basis Shifting" Tax Shelter UIL No. 9300.18-00, at pages 2 and 12 attached as Exhibit 15 to this Opposition.[8]

KPMG asserts that Jacoboni made a mistake in settling with the IRS. However, in November and December 2002, KPMG refused to advise its clients on whether they should participate in the IRS Notice 2002-97 global settlement program and accept the IRS settlement

---

[8]    Litigating against IRS would be an expensive and unsuccessful process. This is illustrated by the Perez brothers, who at KPMG's direction, paid their taxes and interest and sued IRS for a refund in federal district court. After realizing their tax refund litigation had no merit, the Perez brothers settled their case against IRS and sued KPMG. The Perez brothers favorably settled their lawsuit against KPMG two days before their case was scheduled to begin trial on December 1, 2003. Jacoboni Decl. ¶ 13.

offer. <u>See</u> Jacoboni Decl. ¶20 and Exhibit 18 to this Opposition. As the deadline for accepting

the IRS offer approached, some KPMG clients (who continued to retain KPMG to represent

them in negotiations with the IRS) requested KPMG's recommendation on whether to accept the

IRS settlement offer. KPMG ignored their requests. It is the height of hypocrisy for KPMG to

argue that Jacoboni should not have settled when KPMG refused to advise clients about whether

to accept the IRS offer. Because KPMG did not tell its other clients to reject the IRS offer, it

should not be permitted to attack Jacoboni's responsible decision to mitigate his damages.[9]

IRS Commissioner Everson recently testified before the Senate Finance Committee that

over 90 percent of the known participants in FLIP and OPIS strategies have elected to settle with

IRS. <u>See</u> Jacoboni Decl. ¶20. There is a reason for this high percentage – FLIP and OPIS <u>are</u>

abusive tax shelters. Jacoboni explains the reasons why he settled with IRS:

> [T]o mitigate my damages in this case by at least 20 percent as permitted under
> Notice 2002-97; to avoid possible IRS penalties; to avoid IRS audit expenses; to
> avoid having to pay *full* taxes and interest and then suing IRS for a refund in
> federal court in a case with little or no merit; because <u>no one at KPMG advised</u>
> <u>me to set aside money in case the strategy was disallowed by IRS and I had to pay</u>
> <u>taxes and interest (Jacoboni Dep. Tr. 83-84)</u>; because I have confirmed in
> discovery that KPMG defrauded me; because the government is pursuing KPMG
> as a tax shelter "promoter;" because many other taxpayers who were induced into
> FLIP and OPIS strategies have filed their own lawsuits against KPMG; and
> because, <u>according to the IRS, the overwhelming majority of eligible taxpayers</u>
> <u>have elected to participate in the IRS global settlement program under Notice</u>
> <u>2002-97.</u>

Jacoboni Decl. ¶19) (emphasis added). Not settling with the IRS would have been foolish. The

fact that Jacoboni mitigated his damages and sensibly elected to settle with IRS gives KPMG no

protection from benefit of the bargain damages.

---

[9]    KPMG is opportunistic in its arguments. Had Jacoboni not settled with the IRS, KPMG would have likely
argued that Jacoboni failed to mitigate his damages. Likewise, if Jacoboni sued the IRS and then having lost sued
KPMG, KPMG would have argued that Jacoboni's claims were barred by statutes of limitation.

**D.    Because Courts Look to the Facts of Each Case, KPMG Overstates Its Argument that Courts Must Prohibit Damage Awards Measured by Reference to a Tax Liability.**

Jacoboni seeks to recover damages incurred as a result of KPMG's breach of contract and creation of a false "expectation" that its tax strategy had value. KPMG knew that FLIP had no value, yet it sold the product anyway. In light of KPMG's tax shelter swindle, the fact that Jacoboni would have owed some debt to the IRS – had he never met KPMG – makes no difference. The damages analysis is the same that would result if Jacoboni paid for a contract whereby KPMG agreed to pay Jacoboni's debt to another. If KPMG then absconded with Jacoboni's payment and did not pay the debt, Jacoboni could sue for losses suffered by KPMG's fraud and breach of contract, with damages measured by the amount of the debt.

Most of KPMG's cases concern securities fraud and address different facts. As Jacoboni has previously explained in depth and as KPMG's documents and pleadings make clear, this case is not about securities fraud. See Jacoboni's Opposition to KPMG's Motion for Judgment on the Pleadings filed November 24, 2003. KPMG fraudulently sold, delivered and concealed illegal tax advice. Even in KPMG's securities fraud cases (where the facts concern sale of securities and not sale of tax advice), courts do not foreclose recovery of damages measured by reference to a tax liability.

For instance, KPMG relies upon DCD Programs Ltd. v. Leighton, 90 F.3d 1442, 1446 (9th Cir. 1996), a case where the plaintiff had already recovered damages through a prior settlement. The Ninth Circuit held that the plaintiff's taxes should not be included as damages for securities fraud (fraud in connection with defendant's sale of partnership interests). Although not mentioned by KPMG, the Ninth Circuit explained that it was obligated to award damages "appropriate to the facts of the case." Id. The Ninth Circuit ultimately found that an "out of

pocket" measure was more appropriate for assessing plaintiff's damages. Id. at 1449. The Ninth
Circuit also emphasized that its finding "is not to suggest, however, that anticipated but
unrealized tax benefits are irrelevant to the calculation of losses." Id. at 1447. Thus, even under
DCD Programs Ltd., the fact that a tax liability is relevant to calculation of losses does not mean
that KPMG can escape paying the damages it caused.[10]

This Court's decision in Jones v. Childers, 1992 WL 300805 (M.D. Fla. 1992), aff'd in
pertinent part, 18 F.3d 899 (11th Cir. 1994), also undercuts KPMG's claim that a plaintiff cannot
recover damages measured by reference to a tax liability. As this Court will recall, the plaintiff
was an individual who sought general financial planning assistance and who (like Jacoboni) was
thoroughly defrauded through the sale of illegal tax shelters. This Court awarded plaintiff actual
damages, measured by reference to a tax liability, based on defendants' sale of illegal tax shelters
which increased plaintiff's tax liability. Id. at *23. The Court also awarded damages based upon
interest and penalties paid to the IRS, investment losses, and return of funds paid to defendants.
Id. at *12 (awarding damages "comprised of unnecessary tax obligations, penalties and interest
imposed on [plaintiff] in connection with [investments], the loss of the investments themselves,
and the return of funds paid to [defendants]").

In addition to these damages, plaintiff in Jones sought to recover a sum paid to the IRS
that was unrelated to defendants' fraudulent sale of the illegal tax shelters. This Court declined
to award plaintiff this portion of his taxes – explaining that this sum is "owe[d] to the IRS based
on [plaintiff's] income and is not damages proximately caused by the action of Defendants." Id.
at * 23. This Court explained that: "Failure to reduce [plaintiff's] income could be compensable

---

[10]    KPMG's reliance on Securities Group 1980 v. Dayton Securities Assoc., 124 B.R. 875 (Bankr. M.D. Fla.
1991) (applying New York Law) and Stone v. Kirk, 8 F.3d 1079 (6th Cir. 1993) is also misplaced. Both cases
addressed securities fraud and were decided based on a securities fraud analysis. Unlike the factual record before
this Court, those courts were not examining recovery of damages in connection with the sale of illegal tax advice.

injury on the facts of this case. However, the Court does not have available to it evidence on this type of harm and cannot speculate on the tax savings [plaintiff] might have enjoyed with competent financial advice." Id. Thus, damages based on this portion of plaintiff's tax liability could also have been awarded had plaintiff introduced supporting evidence at trial. Id. This Court's thorough analysis and findings occurred post-trial based upon consideration of all of the evidence before it.

This Court's damage analysis in Jones is relevant to this case, although this Court will hear different causation and damages evidence at trial. Unlike Jacoboni, who was sold a tax product that was represented to be of specific value (elimination of capital gains tax liability), the Jones plaintiff was not induced to have such a concrete expectation. The Jones plaintiff did not purchase a product which was represented to have a particular value. The evidence will establish that KPMG caused Jacoboni's damages by failing to deliver a specific expectation – it sold a product which is illegal and has no value. This evidence will further establish that KPMG caused Jacoboni compensable injury by failing to reduce his taxable income.

KPMG also relies upon dicta in Loftin v. KPMG, LLP, et al., 2003 WL 22225621 (S.D. Fla. 2003) (clarified by 11/12/03 Order at 6) to argue that Jacoboni cannot recover "benefit of the bargain" damages despite the overwhelming evidence of KPMG's fraud. However, Loftin had not yet been assessed a deficiency by the IRS. For this reason, the court found Loftin's state law claims premature, holding that Loftin failed to state any claims for relief because he had not established that he suffered any injury. Id. *7 ("Even if Loftin is anticipating having to make a large payment to the IRS, the amount and nature of the payment remain unknown" (emphasis in original)). In contrast, Jacoboni's injury is both concrete with an amount and nature that are known. He has entered into a Closing Agreement with the IRS and been assessed $6,468,294 in

21

taxes plus approximately $3,234,000 in interest. <u>See</u> Exhibit 20 and Jacoboni Decl. ¶¶ 19-20. Unlike Loftin, Jacoboni has cognizable claims and damages.[11]

Had KPMG's assurances been true (that its tax strategy was a legal and legitimate way for Jacoboni to offset his capital gains tax liability), KPMG would have provided Jacoboni the "benefit of its bargain" and Jacoboni would have received the "value" that he had purchased. Instead, KPMG sold Jacoboni a product that was illegal and valueless. Had Jacoboni known the truth, he would never have purchased the valueless product. Instead, he would have taken alternate steps to offset his tax liability, as he was in a position to do. Jacoboni was approached by other professionals with alternative strategies, and the evidence demonstrates that KPMG prevented Jacoboni from obtaining competent tax advice. Jacoboni Decl. ¶¶ 6 and 11. On similar facts, courts have upheld or awarded damage recoveries measured by reference to a tax liability. For example, in <u>Vogt v. Abish</u>, 663 F.Supp 321 (S.D.N.Y. 1987), the federal court awarded damages based on tax liability where an accountant committed fraud, which included failing to inform plaintiff that he could legally shelter income to avoid taxes. The court explained:

> [H]ad the Schedule K-1 tax return material furnished to plaintiff by defendants in early 1982 reflected the $15,127 capital loss, plaintiff would have taken steps to incur offsetting short-term capital gains, as he was in a position to do so, and would have obtained tax-shelter income. It is reasonable to assume that [plaintiff] could and would have fully utilized the carry-over loss had he possessed this information[.]

<u>Id</u>. at 327. The court emphasized that it was awarding "fair and reasonable damages . . . caused by the defendants' conduct." <u>Id</u>. at 325. <u>See</u> <u>also</u> <u>Jobe v. Int'l Ins. Co</u>., 933 F.Supp 844, 860 (D. Ariz. 1995) ("[t]he injured plaintiff in a tax malpractice action may recover: (1) the taxes paid

---

[11]    Again, KPMG relied upon a case where the court addressed allegations – not in this case – that supported securities fraud, a type of claim where the damages analysis does not normally involve fraudulent sale of tax advice. Where the facts demonstrate fraudulent sale of tax advice as alleged by Jacoboni, there is a much closer causal link between the fraud and resulting damages measured by reference to a tax liability.

after audit, appeal, and/or settlement attributable to the negligence; (2) interest paid on those taxes"); King v. Neal, 19 P. 3d 899, 901 (Okla. Dist. Ct. App. 2001) (finding "no error by the trial court in rejecting [defendant's] requested instruction to exclude the actual taxes owed from the jury's assessment of damages"); Baker v. Bennett, 603 So.2d 928, 936 (Ala. Sup. Ct. 1992) (affirming jury damages award despite argument that "the tax benefit to be gained from the computer transaction was a deferral, not a deduction, and that [plaintiffs] would have had to pay taxes to the IRS in any event"); and Bancroft v. Indemnity Ins. Co. of North America, 203 F.Supp. 49, 57 (W.D. La. 1962) (awarding damages in full amount of tax liability despite argument that damages would place plaintiffs "in a superior position to that existing before the transactions occurred").

There is no prohibition on recovering damages measured by reference to a tax liability. Rather, recovery is defined by the facts of the case. The evidence will establish that KPMG sold a product promising it had a specific "value" and that this product was instead worthless. Because material facts are in dispute, summary judgment is not appropriate.

## V.    JACOBONI MAY RECOVER THE INTEREST ON TAXES AS DAMAGES.

In accounting malpractice actions, it is well-established that interest is recoverable as this "furthers the overriding tort damages principle of restoring the plaintiff to the position he or she would have been in but for the actions of the tortfeasor." Ronson v. Talesnick, 33 F.Supp.2d 347, 354 (D.N.J. 1999) (taxpayer entitled to recover interest in accounting malpractice actions); (Jobe, 933 F.Supp. at 960 (accord); Dail v. Adamson, 212 Ill.App.3d 66 (Ill. DCA 3 1991) (accord); see also Jones, 1992 WL 300805 *12 (awarding interest). KPMG cannot dispute that it caused Jacoboni to suffer damages in the amount of at least $3,234,000 – interest that he would not otherwise have had to pay. KPMG could have prevented Jacoboni from owing this interest.

Instead, KPMG's concealment of its misconduct permitted this interest to grow.

In 1998, 1999, 2000 and 2001, KPMG knew the IRS was "on the trail" towards discovering the illegal FLIP tax shelter. Indeed, in August 2001, KPMG's Carolyn Branan admitted that KPMG knew the IRS had been investigating FLIP for the prior 2 ½ years. Still, KPMG continued to conceal from Jacoboni and its other FLIP and OPIS clients the fact that the tax shelters were illegal. It was not until IRS Notice 2001-45 on July 26, 2001, and the weeks that followed, that KPMG's fraud and the illegality of its product was revealed to KPMG's clients and the world. See Jacoboni Decl. ¶¶ 12-13.

KPMG argues that Jacoboni should not be permitted recovery of interest because he presumably earned money through conservative investments of his purported "tax savings" to offset the need for KPMG to pay the damages it caused. There is no evidence to support KPMG's assumptions of fact. KPMG, as Jacoboni's accountant until 2001, also knows that this assumption is false. KPMG never suggested that Jacoboni "reserve" or safely invest any of the money not paid in 1998 for his 1997 taxes in the event that the IRS challenged KPMG's advice. See Jacoboni Depo. Tr. at 83-84, Exhibit 2 to this Opposition. Indeed, KPMG told Jacoboni that the IRS approved of KPMG's strategy and that KPMG was "on the hook" and would assume financial responsibility if there were ever a problem with its tax advice. Now, KPMG claims that it is "speculative" for Jacoboni to seek recovery of interest that it caused him to have to pay (KPMG Mem. at 16 n. 6).[12]

KPMG is engaged in speculation. Jacoboni – like many taxpayers – lost substantial money after 1998 as a result of the downturn in the economy and the collapse of emerging

---

[12]     While KPMG relies on Jones at times, KPMG also seeks to distinguish Jones by discussing the concept of "interest differential" (KPMG Mem. at 16 n. 6). KPMG states that, should this be an issue at trial, Jacoboni "cannot offer evidence" on the amount needed to calculate such differential (Id.). KPMG is wrong and its argument again raises fact issues for trial. While KPMG relies on Freschi v. Grand Coal Venture, 767 F.2d 1041 (2d Cir. 1985), KPMG fails to note that this opinion was vacated by the U.S. Supreme Court. See Freschi, 478 U.S. 1015 (1986).

technology companies. Taxpayers who invested in "dot-coms" or in businesses plagued (ironically) by "corporate accounting scandals" watched their assets wither. Suffice it to say, Jacoboni did not make money on his supposed "tax savings." Rejecting the argument now being made by KPMG, another federal court explained:

> Denying recovery of IRS interest from a negligent accountant permits the tortfeasor to benefit from the presumption that a harmed taxpayer has been or should have been ingenious enough to (1) maintain a sum of money that he would otherwise had to pay over to the IRS and (2) invest that money in a manner in which he earned interest comparable to the interest rate charged by the IRS.

Ronson, 33 F.Supp.2d at 355. In light of KPMG's fraud and concealment, Jacoboni was not "ingenious enough" to know he had been defrauded. Because KPMG relies on material facts which are in dispute, summary judgment is not appropriate.

## VI.    JACOBONI MAY RECOVER OUT OF POCKET DAMAGES.

According to KPMG, Jacoboni's evidence and the overwhelming evidence of KPMG's widespread and deliberate tax shelter swindle – addressed by two U.S. Senate committees, the U.S. Department of Justice, the IRS, and the SEC – does not exist and KPMG is not responsible for any damages under any measure whatsoever. KPMG is wrong. Jacoboni is entitled to recover the "out of pocket" damages resulting from KPMG's fraudulent sale of its "aggressive," "look-alike" and illegal FLIP product. See Jones, 1992 WL 300805 *12. Indeed, even KPMG's securities fraud cases demonstrate that "out of pocket" damages are appropriate. See DCD Programs Ltd. 90 F.3d at 1446. KPMG was trusted, and yet it lied again and again. KPMG is still "on the hook" for the damages it created.

## CONCLUSION

For all of the foregoing reasons, the Court should deny KPMG's Dispositive Motion for Summary Judgment.

Dated:  December 8, 2003

Respectfully submitted,

Frank A. Hamner (Fla. Bar No. 0059153)
Richard Mitchell (Fla. Bar No. 0168092)
GRAY, HARRIS & ROBINSON, P.A.
Suite 1400, 301 East Pine Street
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880 Telephone
(407) 244-5690 Facsimile

and

Campbell Killefer
Damon W.D. Wright
VENABLE LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4800 Telephone
(202) 344-8300 Facsimile

**Counsel for Plaintiff Joseph J. Jacoboni**

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by the indicated

methods upon Defendants' counsel this 8th day of December 2003.

W.L. KIRK, JR., ESQ.
Florida Bar No. 0111973
MICHAEL D. BEGEY, ESQ.
Florida Bar No. 0120928
**RUMBERGER, KIRK & CALDWELL**
A Professional Association
Signature Plaza, Suite 300
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
(Via Regular U.S. Mail)

KEVIN M. DINAN, ESQ.
JAMES T. PHALEN, ESQ.
**KING & SPALDING LLP**
1730 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-4706
Telephone:  (202) 737-0500
(Via Hand-Delivery)

JOSEPH B. HAYNES, ESQ.
**KING & SPALDING LLP**
191 Peachtree Street
Atlanta, Georgia  30303
Telephone:  (404) 572-4600
(Via Regular U.S. Mail)

**Counsel for Defendant KPMG LLP**

Richard Mitchell